**WO**                                                                          KAB

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Jonathan Eric Rivera,                         No. CV-23-02185-PHX-MTL (MTM)

                        Plaintiff,

v.                                            **ORDER**

Madonna Malari,

                        Defendant.

Plaintiff Jonathan Eric Rivera, who is currently confined in the Arizona State Prison Complex-Lewis, brought this civil rights action under 42 U.S.C. § 1983. Defendant moves for summary judgment. (Doc. 65.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 67), and he opposes the Motion. (Doc. 74.) The Motion is fully briefed. (Doc. 75.)

## I.    Background

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a Fourteenth Amendment medical care claim against Defendant Malari, a doctor Plaintiff saw at the Watkins Jail, based on Plaintiff's allegations that she refused to provide Plaintiff treatment for eye, leg, and tailbone problems. (Docs. 9, 28.) The Court dismissed the remaining claims and Defendants. (*Id.*)

## II.   Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

III.    Facts[1]

Plaintiff saw Dr. Malari in the medical clinic at the Maricopa County Sheriff's Office on September 5, 2023. (Doc. 66 ¶ 1.) The medical record from the visit reflects that Plaintiff requested compression socks for right leg swelling, reported eye floaters

---

[1] Plaintiff seeks to supplement his response to include an additional medical record (Doc. 76). Plaintiff's Motion will be granted.

associated with ocular migraine, muscle twitching in his eyelids, lips, left upper arm, and left lower leg, occurring three times a week, lasting from a few seconds to a few minutes associated with increased anxiety levels, tailbone pain on and off, worse when sitting, and that his right leg may be longer than his left leg, causing hip and pelvic discomfort when sitting. (Doc. 66-4 at 137-138; Doc. 66 ¶ 2; Doc. 74 at 1.)  Dr. Malari physically examined Plaintiff's tailbone and didn't find a palpable mass at the low back/sacrum/tailbone during the examination.   (Doc. 66 ¶ 10.)[2]  Plaintiff asserts that he bent over the table, and Dr. Malari gently touched the top of his left buttock and said she did not see anything and he responded, it is on his bone, and she then said "where?" and Plaintiff told her where and she touched his lower back and said she did not feel anything, but Plaintiff believed she did not want to touch near his anus where Plaintiff felt the pain.  (Doc. 1 at 8.)  Dr. Malari asserts that she did not find any tenderness during the examination, and Plaintiff asserts that this was only because she did not touch the correct spot.  (Doc. 66 ¶ 11; Doc. 74 at 9-10 ¶ 11.)

Dr. Malari noted that Plaintiff appeared anxious without acute respiratory distress; his eyes, nose, and mouth were normal; she did not observe muscle twitching in Plaintiff's face, arm or leg; his heartrate was normal; his lungs were clear; his abdomen was soft, nontender, distended; he had no visible rash, lower extremity edema, or obvious leg length discrepancies; he had a normal and stable gait and no gross abnormalities or palpable mass in Plaintiff's low back/sacrum/tailbone.  (Doc. 66-4 at 137-138.)  Dr. Malari advised Plaintiff to elevate his legs when he notices edema and told him he can wear TED hose if needed, stated she would prescribe him 400 mg ibuprofen as needed for migraines, advised him to monitor symptoms of twitching, which were not present on exam and made a note

---

[2] In his Controverting Statement of Facts, Plaintiff states "Per Malari's Declaration #29 she did a physical exam on Plaintiff.  In Declaration #30 she states she examines a patient not the Plaintiff's exam the same way because she did not describe Plaintiff's exam or perform it the same way."  (Doc. 74 at 9 ¶ 10.)  The nature of Plaintiff's dispute is not clear to the Court.

to check creatine phosphokinase (CPK),[3] noted that Plaintiff had been seen by psych for anxiety and agreed that Plaintiff should be on medications for anxiety, but deferred to "psych orders," reassured Plaintiff that his tailbone felt normal, but advised him to monitor symptoms, and concluded no further workup was needed regarding Plaintiff's leg length discrepancy.  (*Id.* at 138.)  Dr. Malari later decided against ordering ibuprofen because Plaintiff had an ongoing prescription for acetaminophen, which she concluded was safer than ibuprofen for a patient with hypertension and a cardiac condition.  (Doc. 66-5 ¶ 17.)

## IV.    Discussion

Defendant asserts that she is entitled to summary judgment because there is no evidence that Plaintiff was at substantial risk of serious harm or that her treatment decisions were objectively unreasonable under the circumstances.

### a.  Legal Standard

"[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard."  *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)).  To state a medical care claim, a pretrial detainee must show

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'"  *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S.

---

[3] CPK is a muscle enzyme, and testing would show whether a patient had myalgias or muscle dysfunction.  (Doc. 66 ¶ 32.)  Plaintiff later received the CPK test per Defendant's order and it was normal.  (Doc. 66 ¶ 33.)

389, 397 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

### b. Discussion

With regard to the tailbone pain, Defendant asserts that there is no evidence that her examination of Plaintiff and conclusion that his tailbone pain did not require treatment at that time put Plaintiff at substantial risk of serious harm. In Response, Plaintiff asserts that Dr. Malari was reckless in her treatment of him because she did not order an MRI for his tailbone even though Plaintiff had previously reported tailbone pain to other providers and Plaintiff continued to have tailbone pain after his visit with Dr. Malari.

Here, there is no evidence that Dr. Malari's conclusion that Plaintiff did not require treatment at that time for his tailbone pain put him at substantial risk of serious harm. Dr. Malari attempted to examine Plaintiff and did not find obvious evidence of the cause of Plaintiff's tailbone pain. Dr. Malari asserts that treatment for tailbone pain when there is no recent trauma or injury is to avoid sitting in the same position for too long or to change position to relieve pressure on the tailbone. (Doc. 66 ¶ 49.) Although Plaintiff asserts that Dr. Malari's examination of his tailbone was inadequate, an inadequate exam may support a negligence claim, but it is insufficient to rise to the level of reckless disregard, and Plaintiff fails to show that the inadequate exam subjected him to a substantial risk of serious harm.

With regard to ocular migraines/floaters, Defendant asserts that there is no evidence that she put Plaintiff at substantial risk of serious harm by allowing him to continue to use acetaminophen for his ocular migraines and there is no evidence that any other treatment

was warranted or necessary.  In Response, Plaintiff asserts that Malari did not treat him with "any kind of pain meds" and she should have ordered an MRI with and without contrast.  (Doc. 74 at 5.)  Defendant asserts that ocular migraines are generally managed by controlling exposure to triggers and over-the-counter pain medication.  (Doc. 65 at 9.)

Plaintiff's assertion that Dr. Malari should have ordered an MRI is unsupported.  The evidence shows that Dr. Malari considered Plaintiff's complaints, initially decided that ibuprofen could help Plaintiff, but later concluded that ibuprofen was contraindicated for Plaintiff and he could use his ongoing Acetaminophen prescription.  Although there is no evidence that Dr. Malari communicated her Acetaminophen decision to Plaintiff, there is no evidence that this failure to communicate placed Plaintiff at substantial risk of serious harm or that Plaintiff lacked the ability to follow-up.

With regard to muscle twitching, Defendant asserts that ordering CPK testing to rule out evidence of muscular dysfunction and telling Plaintiff to continue monitoring when she observed no evidence of twitching did not place Plaintiff at a substantial risk of suffering serious harm.  Plaintiff did not respond to this argument, and there is no evidence in the record that Dr. Malari's decisions regarding Plaintiff's reports of muscle twitching put Plaintiff at substantial risk of suffering serious harm.

With regard to leg complaints, Defendant asserts that leg length disparity does not require treatment if it does not affect the patient's weight and she did not observe Plaintiff to have a leg length disparity, Plaintiff received TED hose to help with his lower extremity edema, and canvas shoes are not medically necessary for treating lower extremity edema or peripheral venous insufficiency.  In Response, Plaintiff asserts that Defendant should have measured his legs, monitored for edema, and after his appointment, he received the wrong size of TED hose, and was not given the correct size for 8 months.

Plaintiff has not shown that Dr. Malari's failure to provide treatment for his leg length disparity caused a substantial risk of serious harm and has not shown that her failure to observe swelling and instruction to continue monitoring caused a substantial risk of serous harm.  Although Plaintiff argues that a nurse prescribed him TED hose a few days

after his appointment with Malari, and he never received that hose, Plaintiff produces no evidence that Dr. Malari knew Plaintiff did not receive his hose or acted in a way that caused him to suffer a substantial risk of serious harm.

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 65), Plaintiff's Motion to Submit Supplementary Evidence to Plaintiff's Response to Summary Judgment (Doc. 76), and Plaintiff's Motion to Request Status Update (Doc. 78).

(2)   Plaintiff's Motion to Submit Supplementary Evidence to Plaintiff's Response to Summary Judgment (Doc. 76) is **granted**.

(3)   Defendant's Motion for Summary Judgment (Doc. 65) is **granted**, and the action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.

(4)   Plaintiff's Motion to Request Status Update (Doc. 78) is **denied as moot**.

Dated this 26th day of May, 2026.

Michael T. Liburdi
Michael T. Liburdi
United States District Judge